We will call the next case, please. 309-1053, people of the state of Illinois, appellee by Laura E. DeMichel v. Kieran V. Murdock, appellant by Rachel Moran. Ms. Moran? Good morning, your honors, and may it please the court. I am Rachel Moran, and I represent the appellant, Kieran Murdock. Mr. Murdock raised two separate grounds for relief in his brief. I intend to focus primarily on issue two, and will address that claim first. Your honors, jailhouse informants are perhaps the most unreliable evidence the state can present in a criminal case. In Kieran Murdock's case, that was the only evidence against him. This court should reverse Mr. Murdock's first-degree murder conviction and remand for a new trial for two reasons. First, the trial court erred when it denied Murdock's motion for new trial based on the newly discovered evidence of two witnesses who testified that the felons who implicated Murdock had concocted their stories in exchange for favorable treatment in their own cases. And second, the trial court failed to ascertain the jurors' understanding of any of the Rule 431B principles. And in this case, because the evidence was closely balanced, that error was reversible. Turning to the first point, the trial court erred when it denied Murdock's motion for new trial. And the state's evidence against Mr. Murdock was extremely weak. There was no physical evidence linking Murdock to the crime. No eyewitnesses came forward after the crime. Murdock made no statements to the police. The first suggestion, even, that Murdock was involved in this crime came more than three years after the incident. The incident occurred in March of 2005. In April of 2008, Micah Foreman was arrested. And that very night, he told the police, I'll give you someone in an old murder if you'll get my charges reduced. He's arrested on Class 1 drug charges. They're reduced to Class 4 charges. And he implicates Murdock. Eight months after that, in December of 2008, two more inmates at the Tazewell County Jail come forward. They read about the case in the newspaper and say, hey, we've got information about the case, too. And that was Michael Sullivan and Anthony King. Michael Sullivan testified at trial that Murdock confessed to him while they were in jail together in Tazewell County. And Anthony King testified that he was the intended victim in the case and that while he was in jail with Murdock, Murdock essentially pointed his finger at him as if he were pointing a gun. There were four witnesses in this case that implicated Murdock. All four were convicted felons, jailhouse informants who admitted to receiving, expecting to receive sentence reductions in their cases. And in Foreman's case, not only did he receive a sentence reduction and consideration on an escape charge, but he also received total immunity from prosecution even though he admitted to being involved in the murder. At the motion for new trial, Murdock presented two witnesses, Denarius Barnett and Kenzie Ross. Barnett testified that in July of 2008, he and Micah Foreman were in the lockup together discussing their cases in their pretrial cases and Foreman admitted that he planted a murder on someone in order to get his charges reduced. That was Barnett's testimony unimpeached. Kenzie Ross testified that he also was an inmate in the Tazewell County Jail and he spent a lot of time with Anthony King and Michael Sullivan in that he observed Sullivan and King concocting their story together. He observed Sullivan telling King what to say, giving him information about where the crime occurred. King telling Sullivan, I apologize, agree with me, corroborate my story about Murdock pointing his finger at me like he was threatening me. And also telling Sullivan, Sullivan admitting that he would say whatever he had to to get out of jail. Illinois uses a four-pronged test in determining whether a motion for new trial based on newly discovered evidence should be granted. And the four prongs of the test are whether the evidence has been discovered since trial, whether it could not have been discovered prior to trial through the exercise of due diligence, whether the evidence was not cumulative, and whether the evidence would likely change the results on retrial. In Murdock's evidence, the testimony of Barnett and Ross does meet all four of those prongs. And I'll just go through them one by one. First, the evidence was discovered since trial. There's really no question about that point, although the state did contest it in its brief. The evidence is undisputed that Murdock's attorneys received the information about Kenzie Ross in an envelope from Murdock's mother after the trial was over, on July 22, 2009. After the trial was over, Murdock's mother came forward and said, hey, I just found out that Kenzie Ross just told me, basically, that he knows two of these witnesses and he knows they were lying. They received that information shortly after the trial concluded. Denarius Barnett came forward several days after the incident. He was an inmate with Murdock in Peoria County Jail at that point and realized that Foreman had testified against Murdock and told him, hey, I talked to Foreman about a year ago and he admitted to planting a murder on someone. I just didn't know it was you until right now. So there's no question. The evidence was received after trial. And also, it couldn't have been discovered prior to trial because even Ross and Barnett didn't know they had information. So there's no way, short of interviewing anyone who's ever spoken to these other inmates, there's no way the attorneys could have discovered this information prior to trial. As far as the third prong, Your Honors, the question of whether the evidence was cumulative, it was not. According to the Supreme Court in People v. Molstead, the question of whether the evidence is cumulative only, and I'll quote the court, when it adds nothing to what is already before the jury. That, of course, didn't happen in this case. The jury knew nothing about any of this information. They didn't know that King and Sullivan had created their stories together, had collaborated on what to say. They didn't know that Foreman had admitted to planting the murder on someone. They didn't know any of this information. And so, although the state claims that it's cumulative because these witnesses were already impeached in some ways, because the jury already knew that they were expecting sentence reductions, that's all the jury knew. The jury didn't know that they were expecting sentence reductions. The jury didn't know any of this other information about the inmates making up their information together, the inmates deciding to collaborate on their stories. This is People v. Torres in the First District Appellate Court. The court stated that where testimony would, quote, create new questions in the mind of the trier of fact, that's the kind of evidence that is appropriate for a new trial that is not cumulative. And that's the epitome of what we have here. We have already weak witnesses who have certainly been impeached to some extent at trial, who certainly lack credibility. But this is testimony that would absolutely create new questions in the mind of the trier of fact, the jury, as to whether they're even drastically less credible than they appeared at trial. I mean, exactly whether they were admittedly lying when they implicated Murdoch. That's what we have here. Your Honors, as to the fourth prong, the question is whether- So you're saying, in effect, these witnesses can have a restoration of their credibility in front of the jury because they're going to say this? Their credibility would not be, if Your Honor said restoration, no. It would not be restored in any sense. It would, in fact, be the opposite. Their credibility would be very much at issue, and it's our position that this new evidence would likely change the result on retrial. Because you have a case, essentially, that was already weak to begin with, where the informants, the snitches, basically, who testified against Murdoch, already had massive inconsistencies in their own testimony and were expecting sentence reductions. And now, on top of that, you have two witnesses who say, no, we heard them admitting. One says, I heard the main witness admitting to planting the murder, and I heard the other two witnesses concocting their stories. So their credibility would be anything but restored, Your Honor. As far as the fourth prong, that touches on the fourth prong, the question of whether the new evidence here would likely change the result on retrial. And it's important to understand what that prong means, would likely change the result on retrial. In Molstad, the Supreme Court case, the court said the evidence need not establish that the defendant was innocent, but it merely shows that, quote, the evidence should be scrutinized more closely. And that's absolutely what we have here. We have evidence that's already questionable, and this indicates that the evidence should be scrutinized more closely, the evidence that was admitted at trial. Does that go along with the Taurus analysis of asking, of putting the question to the mind of the juror? Yes, it does, Your Honor. The third and fourth prong kind of go together. Those are essentially just two different ways of stating the same thing. But that's the standard for this court. Would the evidence likely change the result on retrial? Essentially, is this court confident that justice was done? As another case, People v. Ortiz put it, is this court confident that justice was done, or is there some question as to whether the outcome was appropriate? And I'd like to discuss some of the inconsistencies that were already present in the state's case to show how weak it was. Micah Foreman, he's the only person, Your Honors, who said he actually saw the murder and said that Murdoch committed it. That's the only evidence of anyone who says he saw the murder. Foreman essentially admitted to being the accomplice and received immunity from the state for admitting that. He says that he and Murdoch were driving with a couple friends together in a van. They saw Anthony King's car. Murdoch said something like, I'm going to smoke him. They jumped. Just Foreman and Murdoch jumped out of the car together, ran over. Foreman acted as the lookout while Murdoch shot up the car. Anthony King was not actually in the car. He's not the person who was killed. But that's the testimony Foreman provided. Your Honor, one of the, just to highlight a couple of the inconsistencies in Foreman's testimony, in addition to the fact that he was receiving immunity and that he had two other charges dropped, Foreman was adamant that a man named D'Amico Walker participated in this robbery and was one of, excuse me, participated in the van ride, and then that they went back to D'Amico's house after the incident. There's no question, Your Honor, it's undisputed, D'Amico Walker was incarcerated when this happened. He couldn't have been there. The defense introduced a stipulation of trial, or the testimony of a jailhouse records keeper who clarified that D'Amico Walker was incarcerated in the Peoria County jail when this happened. And yet Foreman is insisting repeatedly throughout his testimony that D'Amico Walker was driving the van that they rode, that he was with them the whole time, and that they went back to D'Amico's house after the incident. Foreman also testified that he only expected that they would be robbing King and was, quote, frozen in shock when Murdoch started firing bullets. But on the other hand, he testified that before the incident even happened, as I just mentioned, Murdoch said, I'm going to smoke this guy, which Foreman understood meant that means he's going to kill him. So there's another inconsistency. One of the most important ones is that Foreman admitted to having talked with other inmates about this case, quote, so many times between the incident and trial. So where we already have a situation where it's people admitting, yeah, we talked, we heard about this in jail. We have read about this in the paper and decided we had information. I'm expecting to get my sentence reduced because of this. And then Foreman admits on the stand, oh, yeah, I've talked to so many people about this incident. It's hard to even remember what happened. So who knows where he got this information? If he possibly was the shooter who is receiving immunity for implicating someone else. We don't know. But we do know that he's talked to a lot of people about it. Thank you. And, Your Honor, to turn this court's attention to People v. Williams, it's a Supreme Court case in which the court held that the testimony of an inmate who was a person of interest in a murder and therefore had a motive to implicate someone else was not reliable and not sufficient even to prove the defendant guilty beyond a reasonable doubt in that case. In Williams, the court reversed the conviction outright. But that's exactly what we have. That is Micah Foreman in a nutshell, a person of interest in the murder who had a motive to implicate someone else. And I'd also like to direct this court's attention briefly to People v. Belknap, which was decided just two years ago in which this court held that the testimony of jailhouse informants, notably two informants in the Tazewell County Jail, just like we have here, was not credible. That was not a motion for new trial issue. That was actually a Rule 431B issue. But the court held that, and to quote the court, jailhouse informants must be treated with caution. That's all we have here. The only testimony is jailhouse informants who should be treated with caution. In this case, their evidence was barely sufficient to convict Murdock and certainly not sufficient. In light of this new evidence, for this court to be confident that the outcome should remain the same. Thank you. No questions. Thank you, Ms. Moran. And Ms. DeMichel. Did I pronounce that correctly? May it please the court. Counsel. Lauren DeMichel on behalf of People in this case. Because the defense focused on the second issue, the people will focus on the second issue as well. The people argue that the trial judge's decision that a new trial was not warranted on the basis of newly discovered evidence was not an abuse of discretion. The standard here is abuse of discretion, so we look to see whether, with the information the trial judge had, whether his decision that a new trial wasn't warranted was within his discretion. There's three elements, four if you separate the last two into two, as some cases do, that must be met in order for a new trial on newly discovered evidence to be proper. Here, the trial judge specifically found both that the evidence was not newly discovered and also that it was not so conclusive to likely change the result on retrial. And the record supports fully both of those trial judge's findings. Regarding the trial judge's finding that the evidence was not newly discovered, the trial judge clearly found that Ross and Barnett were not credible, at least insofar as they had indicated that they weren't able to pass information on long later. According to the testimony of Ross and Barnett, defendant did not receive the information until after trial, but the trial judge stated in his ruling that the evidence was not newly discovered, meaning he did not believe those pieces of information were true. This finding was not, that the evidence was not actually newly discovered was not an abuse of discretion because Ross and Barnett's testimony as to how they did not come to pass along the information prior to trial did not make sense. Barnett claimed he met Foreman for a few minutes in a holding cell in a Peoria courthouse, and at that time Foreman told him that he had to plant a murder on someone later. He clarified that Micah told me, quote, that he had told on someone. Foreman never used any names in this conversation, even under Barnett's testimony, and Foreman also never said that he wasn't telling the truth when he said that he told on someone. That doesn't mean that he didn't truthfully have the information and testify about it. Later, before defendant's trial, Barnett was housed with defendant in the Peoria jail. Barnett testified that he, quote, guessed that the murder Foreman had mentioned was the Walker murder. However, Barnett said he connected Foreman's statement with defendant at the time at which defendant told him that he was going to go to trial against Foreman. Barnett specifically testified that defendant said he was going to go to trial against Foreman. He didn't say he went to trial against Foreman, didn't say he had gone to trial against Foreman. He used future tense indicating that that conversation, if it indeed took place at all, occurred before defendant's trial. So the trial judge would have believed clearly when he found on the record that the evidence wasn't newly discovered, that either they talked before trial or that the conversation never happened at all. Regarding Ross, Ross claimed to have spent a lot of time with King and Sullivan in the Tassel County Jail, at which point he claims to have learned that they discussed what they were going to tell investigators or testify about. Ross said after he was released from jail, he decided to go over to defendant's father's house because they were friends. At defendant's father's house, he apparently learned that defendant was going to trial, his good friend's son was going to trial, and he decided to attend this trial, yet he claims he attended the trial not knowing what the case was about. So he was concerned enough to find out when and where the trial was going to be and go to it, and yet he had absolutely no idea what his friend's son was on trial for. And his friend apparently was concerned enough to tell him when the trial was going to be, yet mentioned no details about what the case was, according to Ross's testimony. He showed up in court that day knowing absolutely nothing about the case. Once in court, Ross says he saw King and Sullivan testify, and at that point he put the pieces together and decided to tell defendant's mom. Ross has experience with the legal system himself. He knows that if he wants to get his evidence to someone who can do something about it, he's got to tell defendant or his lawyers, yet Ross apparently only told his mom, knowing how the legal system works. And then further, Ross said that he heard King testify, that King said he didn't think that defendant did it. He said he heard King say that he thought Foreman did it. However, if you check the record, King never actually said either of those things. So Ross is clearly either never was at trial where he heard that or he's lying about what he heard. When asked what other testimony Ross heard when he was in court, as he claims listening to King and Sullivan testify, he said, he said a few things. I walked out of the courtroom. So now he'd have us believe that he sees someone testifying about a murder for which his friend's son is on trial. He believes they're lying. And yet he walks out of the courtroom. He doesn't stay to listen to what testimony he has to see what other information he might have that he believes would show that they're not telling the truth. Ross also testified at the evidentiary hearing that he had talked to defendant's cousin Cox, who had testified at defendant's trial. He said that Cox told him he didn't know anything about the Walker murder. However, at the evidentiary hearing, Cox also himself testified, and Cox said that what he said at trial was truthful, meaning that Cox did have information about the Walker murder. So when the trial judge found that the evidence wasn't newly discovered, he clearly found that Ross and Burnett were not being truthful, and this was well within his discretion, given the record and what occurred at the evidentiary hearing. Defendant's reply brief is correct that it is the trial judge who is present before the evidence, and the appellate court must defer to the trial judge's credibility determinations. Based on his credibility determinations, the trial judge found that the evidence was not newly discovered, and that was within his discretion. In the alternative, the trial judge also stated on the record that he found that even if the evidence was newly discovered, it was not so conclusive as to likely change the result on retrial. The trial judge is the one that stated that the result would not change on retrial, and he was the one in the position to make that finding. He'd observed both the trial and the allegedly newly discovered evidence testimony, and so in finding the evidence was not so conclusive as to likely change the result on retrial, the trial judge clearly found that any additional impeachment value that Ross and Burnett testimony could have would not cause a trier of fact to change their minds enough about any issue in order to make a difference in the trial result, and that finding is entitled to deference because it's supported by the record. As earlier mentioned, Burnett had said that Foreman told him he had to plant some murder, not using any names, on someone, but he also said that he had told on someone. That means that Foreman never even told Burnett he was talking about the Walker murder in particular, and most importantly, Foreman never told Burnett that he hadn't testified truthfully in order to try and get a sentence reduction. Also, Ross' testimony was that from the information he learned from King and Sullivan, King said he didn't actually see the shooting. King told Ross he wasn't there at the time of the shooting. He was in his house and then came out afterwards, so based off what King knew and communicated with Ross, King and therefore Ross didn't even know who the shooter was. Also, the evidence was merely cumulative. As stated in Ortiz, which discusses Molstadt, the evidence in Ortiz was not cumulative because it went to an ultimate issue. In that case, the ultimate issue was who was present at the time of the attack. Ortiz states that that is distinguishable from, quote, a collateral issue of witness credibility. Here, all the information that the jurors allegedly didn't have before them that would have helped all went to a collateral issue of witness credibility, which, as found in Ortiz, does not add new questions to the minds of the trier of fact. If any one of those three elements aren't present, or four if you separate the discovery of the evidence out, a new trial is not warranted. Here it's clear that none of the prongs are met, and therefore the trial judge is well within his discretion when he denied the motion for a new trial. Regarding the alleged inconsistencies in Foreman's testimony, many of the alleged inconsistencies are not actually inconsistencies. Specifically, Foreman was not adamant that D'Amico was there. He said on page 219, he said, I don't remember if it was D'Amico. I think he was there. That's far from adamant that D'Amico was present. Further, D'Amico was just one person riding in a van. Foreman never claimed that D'Amico had got out with him and was involved in the shooting. Second, defendant says that Foreman claimed he went to D'Amico's after the shooting. Foreman actually said that he went first to defendant's baby mama's house and then to D'Amico's house. The shooting occurred around 1.30 in the morning. The testimony was that D'Amico was released from jail around 5 a.m. that morning. So Foreman could have gone to D'Amico's a few hours after the shooting. Like he said, he went to another house first and then to D'Amico's. Also, Foreman did not say that defendant said he was going to shoot someone while they were still riding around in the van. Foreman said once they got there, defendant said he was going to smoke a person, and that could have been after they'd ran out of the van towards the alley, towards the car, and then what Foreman thought was going to be a robbery turned into a shooting. Also, the jury had the testimony in front of them that Foreman had talked to other people. The jury is the one that determines the credibility of the jailhouse informants. Here they clearly found them credible and convicted defendant on that basis, and it's not in the position of this court to re-judge the credibility when the trier of fact is, that's the job for the trier of fact. Is there no further questions? I don't think so. Thank you very much, Mr. Michael. Thank you, Your Honor. And Ms. Moran, any rebuttal? Just briefly, Your Honor. I'd just like to use this time to correct a few misstatements of the record. Your Honor, the state spent a large portion of its arguments claiming that the trial court, to quote the state, clearly found that Murdoch's witnesses were not credible. If Your Honors look to page 485 to 486 of the record, that is the trial court's only findings as far as its decision to deny the motion for new trial. They're cursory at best, and the trial court never once says that he found the witnesses not credible. That's an inference and only that by the state. As this court is well aware, this court is reluctant to make credibility determinations itself. It defers to the trial court when doing so. And it's actually very important here that the trial court made no credibility determinations whatsoever in this case. Turning to, as far as the state's claim that Foreman never said he wasn't telling the truth, there are two relevant portions of the record. The first is that Foreman admitted to, and I'm quoting Foreman, planting a murder on Murdoch, or on someone initially. That was Barnett's testimony. I think common sense indicates certainly if someone accused, for example, the police of planting evidence, there's no question at all that that's an accusation of creating evidence in order to implicate someone. That's not a truthful statement. Planting a murder does not imply telling the truth. Also, the state claims that Foreman never admitted that it was Murdoch that he planted the murder on. That's actually not true. In the initial statement to Denarius Barnett, Barnett testified that Foreman didn't name anyone. But then Barnett also talked to Foreman again after the trial was over. They ended up being incarcerated together in the Pontiac Correctional Center. And Barnett testified, again, unimpeached, that Foreman said, yes, it was Murdoch. They discussed Murdoch's case, Foreman admitting to planting the murder on Murdoch, and said he was sorry that he did it. That certainly does not indicate that Foreman was telling the truth. And there's no question that Foreman, it was Murdoch he was referencing when he made that statement. And lastly, Your Honors, as far as D'Amico Walker, the state pulled out one statement from Micah Foreman when he said, I'm not sure if Walker was there. There are five references when Foreman is sure D'Amico Walker was part of the incident. He said Walker was in the car with them. He testified that Walker was likely the one driving the car. He testified that he walked with D'Amico back to D'Amico's house. So the state's theory that D'Amico may have been released and just showed up at his house and they met up after the incident, that's not even possible based on Foreman's testimony that D'Amico was with them during the incident and that he walked with D'Amico afterward. Thank you, Your Honors. Okay, thank you, Ms. Moran. Thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short day.